# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PNY TECHNOLOGIES, INC. | Civil Action No. 18-7932 (SRC) |
| Plaintiff, |  |
| v. | **OPINION & ORDER** |
| NETAC TECHNOLOGY CO., LTD., |  |
| Defendant. |  |

**CHESLER, District Judge**

This matter has come before the Court on the motion to dismiss the Amended Complaint for failure to state a valid claim for relief, pursuant to Federal Rule of Civil Procedure 12(b), by Defendant Netac Technology Co., Ltd. ("Netac"). Plaintiff PNY Technologies, Inc. ("PNY") has opposed the motion. For the reasons that follow, the motion will be granted in part and denied in part.

The Amended Complaint asserts nine counts: 1) fraud in the inducement; 2) declaratory judgment of mutual mistake; 3) declaratory judgment of mutual mistake; 4) declaratory judgment of unilateral mistake; 5) declaratory judgment of frustration of purpose; 6) declaratory judgment of patent invalidity of the '024 patent; 7) declaratory judgment that the '024 patent is unenforceable due to inequitable conduct; 8) declaratory judgment of patent invalidity of the '585 patent; and 9) declaratory judgment that the '585 patent is unenforceable due to inequitable conduct. Netac now moves to dismiss all claims in the Amended Complaint.

As to Count One, for fraud in the inducement, Netac argues that the Amended Complaint fails to state sufficient facts to meet the pleading requirements of Twombly and Federal Rule of Civil Procedure 9(b). The Amended Complaint alleges that, during the 2008 mediation, Netac represented to PNY that the '672 patent was "bulletproof," and did not inform PNY of "any pending or threatened patent challenges." (Am. Compl. ¶¶ 137-38.) The Amended Complaint alleges that Netac knew that this representation and omission were false and misleading, and that they induced PNY to sign the settlement agreement. (Am. Compl. ¶¶ 139, 141.)

This Court agrees with Netac that the Amended Complaint fails to state sufficient facts to raise the right to relief for fraud in the inducement above the speculative level. The only facts alleged here are that Netac represented that the '672 patent was "bulletproof" during mediation and that the parties executed a settlement agreement. These factual allegations do not suffice to make plausible a claim for fraud in the inducement. New Jersey law requires the pleading of five elements to make out a claim for fraud:

> The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.

Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997). Count One fails from the first element, which requires a misrepresentation of "a presently existing or past fact." Plaintiff's grievance with the statement that the '672 patent was bulletproof concerns the future of that patent, not its present or past at the time the

statement was made. The Amended Complaint states: "had PNY known at the time of the 2008 Mediation that the '672 Patent was in serious jeopardy of invalidation, PNY would not have signed the Settlement Agreement." (Am. Compl. ¶ 140.) The Amended Complaint pleads no facts that make plausible the assertion that, during the 2008 mediation, Netac knew that the '672 Patent was in serious jeopardy of invalidation. Rather, the Amended Complaint alleges that the process leading to the eventual invalidation of that patent began almost five months after the mediation, on July 9, 2008, when non-party SanDisk initiated an *inter partes* reexamination with the USPTO. (Am. Compl. ¶ 44.) There is no factual support for the inference that these later-arising facts were known at the time of the mediation. The Amended Complaint fails to allege an actionable misrepresentation or omission.

The Amended Complaint does not plead sufficient facts to make plausible a claim for fraud in the inducement of the settlement agreement. Moreover, this Court finds no basis to believe that amendment could cure this defect; Count One will be dismissed with prejudice.

As to Counts Two and Three, for declaratory judgment of mutual mistake, Netac makes a number of arguments. First, Netac argues that Count Two is moot because there can be no mistake because of a particular decision by Judge Bassler as arbitrator. This argument relies on factual assertions extrinsic to the pleadings and cannot be considered on a Rule 12(b)(6) motion; at this juncture, all well-pleaded factual allegations in the complaint are assumed to be true. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Next, Netac advances an unclear argument that Counts Two and Three had to be arbitrated. This appears to rely on the assertion that a factual allegation made in paragraph 109 of the Amended Complaint is incorrect. Again, at this juncture, this Court assumes the allegations in the Amended Complaint to be true. Arguments that the pleadings are false cannot succeed on a motion to dismiss.

In a footnote, Netac argues that Counts Two through Four are barred by the six-year statute of limitations for breach of contract actions in effect in both New Jersey and Hawaii. In opposition, PNY argues that these claims are equitable in nature and are not subject to the limitations applicable to actions at law. The dispute over this issue has not been briefed sufficiently for the Court to decide it.[1] Neither party has persuaded the Court that these claims are clearly of a legal or equitable nature, and the relevance of the statutes of limitation cannot be determined on this record.

Netac next argues that Counts Two and Three, for declaratory judgment of mutual mistake, fail to allege any mutual mistake. Even in the absence of briefing on choice of law, this Court can decide this issue: Count Two does not allege facts which make plausible a mutual mistake under either New Jersey or Hawaii law.[2] The key to this

---

[1] For example, the briefs contain no analysis of: choice of law, the equitable/legal distinction under applicable state law, the impact (if any) of the Declaratory Judgment Act on these issues, laches, etc.

[2] Under New Jersey law, "[t]he doctrine of mutual mistake applies when a mistake was mutual in that both parties were laboring under the same misapprehension as to a particular, essential fact." Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608 (1989). Hawaii has adopted § 152 of the Restatement (Second) of Contracts. AIG Hawai'i Ins. Co. v. Bateman, 82 Haw. 453, 457 (1996). The applicable provision states:

(1) Where a mistake of both parties at the time a contract was made as to a basic

conclusion lies in this allegation:

> 150. Upon information and believe, both PNY and Defendant executed the Settlement Agreement with the understanding that the definition of "flash drives" included only PCBA products, as these were the only products at issue in the Texas Action and the only relevant products that PNY was selling as of February 11, 2008.

(Am. Compl. ¶ 150.) The Amended Complaint thus alleges that the true state of affairs is that PNY and Netac agreed on the definition of flash drives at the time the Settlement Agreement was executed. It also alleges that, subsequently, Netac has alleged that it believed differently at the time the Settlement Agreement was executed:

> 148. Upon information and belief, at the time of the Mediation, both parties believed that they would be settling the Texas Action and that PNY would be paying royalties on the products that were accused in that matter, which were only PCBA products. Defendant has now alleged in the Arbitration that it believed at the time of the 2008 Mediation, and purportedly still believes today, that the definition of "flash drives" for purposes of the Settlement Agreement includes both PCBA and COB devices.

(Am. Compl. ¶ 148.) Again, this states that, at the time of execution, the parties agreed on the definition of "flash drives," but that, subsequently, Netac has taken a different position, and has retrospectively asserted it. Because the Amended Complaint alleges agreement at the time of contracting, and then a later-arising retrospective disagreement, there can be no mutual mistake. This reading of the Amended Complaint is supported by

---

assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he [or she] bears the risk of the mistake under the rule stated in § 154.

5

the assertion that, in the time since the settlement agreement was executed, "[i]t has become apparent . . . that the parties have different understandings of the term 'flash drives.'"[3] (Am. Compl. ¶ 146.) The Amended Complaint does not assert sufficient facts to make plausible the inference that there was a mutual mistake of fact at the time of execution.

As to Count Three, again, the Amended Complaint fails to allege a mutual mistake of fact. Count Three alleges that a basic assumption of the settlement agreement was that the '672 patent "was valid and not susceptible to challenge." (Am. Compl. ¶ 157.) Expectations or predictions about the future course of history are not facts in this context. See Restatement (Second) of Contracts § 151 cmt. a ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here.") Count Three does not allege a mutual mistake of fact.

As to Counts Two and Three, the motion to dismiss will be granted. Amendment

---

[3] Oddly, PNY's opposition brief expressly states and confirms this reading of the Amended Complaint. On page 18, the opposition brief emphasizes that the Amended Complaint alleges that, at the time of execution, "both parties had the same knowledge and understanding that the definition of 'flash drives' included only PCBA products." The opposition brief then challenges Netac's assertion that the Amended Complaint alleges a misunderstanding at the time of execution:

> This is not what the Amended Complaint states. The Amended Complaint states that Netac is *now taking the position* that the term "flash drive" always included COB products. Am. Compl. ¶ 148. However, the Amended Complaint plainly asserts: "both PNY and Defendant executed the Settlement Agreement with the understanding that the definition of 'flash drives' included only PCBA products, as these were the only products at issue in the Texas Action and the only relevant products that PNY was selling as of February 11, 2008."

PNY's opposition brief thus makes very clear that the Amended Complaint does not allege a misunderstanding at the time of execution but, instead, a later-arising disagreement.

appears to be futile. Counts Two and Three in the Amended Complaint fail to state valid claims and will be dismissed with prejudice.

Next, Netac moves to dismiss Count Four, for declaratory judgment of unilateral mistake, for similar reasons. First, Netac argues that the claim has been mooted by a ruling from Judge Bassler which, as already stated, is a factual allegation extrinsic to the pleadings. Netac then argues that the claim is baseless because, in short, the Amended Complaint does not allege the special circumstances required by New Jersey law for reformation because of unilateral mistake. PNY, in opposition, points to Hawaii law. As already explained, because the parties have not briefed the issue of choice of law, this Court cannot dismiss a claim based on an unsupported assumption that New Jersey law governs a contract executed in Hawaii. As to Count Four, the motion to dismiss will be denied.

Next, Netac moves to dismiss Count Five, for declaratory judgment of frustration of purpose, on various grounds. First, Netac argues: 1) the Settlement Agreement covers numerous patents, not just the invalidated '672 and '447 patents; and 2) PNY benefitted from a license to the invalidated patents, and rescission of the entire agreement is inappropriate. These arguments, as presented, lack legal foundation. As already discussed, there is no choice of law analysis, nor any discussion of the state laws relevant to frustration of purpose.

Third, Netac quotes JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc., 431 N.J. Super. 233, 245 (N.J. Super. Ct. App. Div. 2013): frustration of purpose requires a "supervening event [which] must be one that had not

7

been anticipated at the time the contract was created, and one that fundamentally alters the nature of the parties' ongoing relationship." Netac contends that the invalidation of the '672 patent was entirely foreseeable, which is both unpersuasive and inconsistent with the standard this Court must apply on a motion to dismiss. The Third Circuit has summarized the applicable standard, post-Twombly, as follows: "It remains an acceptable statement of the standard, for example, that courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233. Netac's third argument fails to construe the Amended Complaint in the light most favorable to the Plaintiff. As to Count Five, the motion to dismiss will be denied.

Last, Netac moves to dismiss Count Six through Count Nine, which seek declaratory judgments of invalidity and unenforceability of the '024 and '585 patents. Netac argues that these claims are barred by New Jersey's entire controversy doctrine, as they "grew out of the same transaction as the breach of settlement/license agreement claims." (Def.'s Br. 29.) How is this possible? The Amended Complaint alleges that the Settlement Agreement was executed in 2008, and the *inter partes* reexamination of the '672 patent was initiated in 2008. The Amended Complaint alleges that the '024 patent issued in 2011 (Am. Compl. ¶ 65) and that the '585 patent issued in 2012 (Am. Compl. ¶ 76). What was the single transaction that all of these claims grew out of? Netac's brief does not answer this question. The motion to dismiss Count Six through Count Nine will be denied.

For these reasons,

**IT IS** on this 1st day of August, 2018,

**ORDERED** that Netac's motion to dismiss the Amended Complaint (Docket Entry No. 149) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that, as to Counts One, Two, and Three, the motion to dismiss is **GRANTED**, and Counts One, Two and Three are hereby **DISMISSED** with prejudice; and it is further

**ORDERED** that, as to all remaining claims in the Amended Complaint, the motion to dismiss is **DENIED**.

                                                s/ Stanley R. Chesler
                                                Stanley R. Chesler, U.S.D.J